## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ASARCO, Incorporated<br>180 MAIDEN LANE<br>NEW YORK, NEW YORK 10038 | )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | Civil Action No. _____ |
| v | )<br>) | |
| UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, to enjoin defendant United States Environmental Protection Agency (the "EPA" or "Defendant") from withholding from public disclosure certain records within the EPA's possession and control.

2.      Plaintiff's FOIA request, a true and correct copy of which is attached hereto as Exhibit 1, seeks "any records regarding the Recontamination Study at the Omaha Lead Superfund Site located in Omaha, Nebraska (EPA ID# NESFN070348) including, but not limited to, data, communications records, reports, work plans, and any other documentation related to the aforementioned Study."

3.      As of the date of this filing, the EPA has not produced any records in responsive to Plaintiff's request.

**Jurisdiction, Venue and Exhaustion**

4.    This court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i).

5.    Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

6.    Plaintiff has exhausted administrative remedies, as indicated below.

**Parties**

7.    Plaintiff ASARCO, Incorporated is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York.

8.    Defendant United States Environmental Protection Agency is an agency within the meaning of 5 U.S.C. § 552(f)(1). The EPA is charged with responsibility for, *inter alia*, administration of the federal government's Superfund program, which is designed to identify and remedy uncontrolled hazardous waste sites.

**Facts**

9.    On April 22, 2008, Plaintiff, through counsel, filed with the EPA a letter (the "FOIA Request") requesting access to certain documents under the FOIA.

10.    The FOIA Request sought "any records regarding the Recontamination Study at the Omaha Lead Superfund Site located in Omaha, Nebraska (EPA ID# NESFN070348) including, but not limited to, data, communications records, reports, work plans, and any other documentation related to the aforementioned Study."

11.    In a letter dated May 15, 2008, a true and correct copy of which is attached hereto as Exhibit 2, Kathleen A. Montalte, the Freedom of Information Officer for Region VII of the EPA, responded to Plaintiff's FOIA Request as follows: "A review of our records indicates no information responsive to your request."

2

12.     On May 29, 2008, Plaintiff, through counsel, filed an administrative appeal with the EPA's Freedom of Information Operations Staff at the EPA's headquarters in Washington, DC, a true and correct copy of which is attached hereto as Exhibit 3.

13.     Plaintiff's administrative appeal set forth facts, specifically statements by EPA officials involved with the Omaha Lead Superfund Site, indicating that documents responsive to the FOIA Request do exist.

14.     On June 3, 2008, Barbara Bruce, a FOIA Specialist for the EPA, sent Plaintiff's counsel a letter, a true and correct copy of which is attached hereto as Exhibit 4, confirming the EPA's receipt of Plaintiff's administrative appeal on May 30, 2008.

15.     The EPA's receipt of Plaintiff's FOIA appeal triggered the statutory 20 business day response period required under FOIA, 5 U.S.C. § 552(a)(6)(A)(ii).

16.     The EPA failed to respond to the Plaintiff's administrative appeal by the expiration of the statutorily required 20 business day response period on June 27, 2008.

17.     Plaintiff, therefore, has exhausted its administrative remedies as provided in the FOIA, 5 U.S.C. § 552(a)(6)(C)(i), and the EPA's corresponding regulations.

18.     As of the date of this filing, the EPA has failed to respond in any manner to Plaintiff's administrative appeal.

### Causes of Action

### First Cause of Action:
### Violation of the FOIA for Failure to Make Promptly Available the Records Sought by Plaintiff's FOIA Request

19.     Plaintiff repeats and re-alleges paragraphs 1-18.

20.    Defendant's failure to make promptly available the records sought by Plaintiff's FOIA Request violates the FOIA, 5 U.S.C §§ 552(a)(3)(A) and 552(a)(3)(C), and the corresponding agency regulations.

**Second Cause of Action:**
**Violation of the FOIA for Failure to Timely Respond to Plaintiff's Administrative Appeal**

21.    Plaintiff repeats and re-alleges paragraphs 1-18.

22.    Defendant's failure to timely respond to Plaintiff's administrative appeal violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), and the corresponding agency regulations.

**Third Cause of Action:**
**Violation of the Administrative Procedure Act for Failure to Timely Respond to Plaintiff's Administrative Appeal**

23.    Plaintiff repeats and re-alleges paragraphs 1-18.

24.    Defendant's failure to timely respond to Plaintiff's administrative appeal constitutes agency action unlawfully withheld and unreasonably delayed, in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1).

25.    Defendant's failure to timely respond is arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA, 5 U.S.C. § 706(2)(A).

WHEREFORE, Plaintiff prays this Court:

A.    To declare that Defendant's refusal to disclose the records requested by Plaintiff is unlawful;

B.    To order Defendant to immediately process Plaintiff's FOIA Request in its entirety and conduct a thorough search for the requested records;

C.    To order Defendant to permit Plaintiff to have access to the documents requested in Plaintiff's FOIA Request;

D.    To award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to the FOIA, 5 U.S.C. § 552(a)(4)(E); and

E.    To grant such other and further relief as the Court may deem just and proper.

Dated: Washington, D.C.
July 30, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _____
Michael D. Nolan (DC Bar # 433722)
Sean Newell (DC Bar # 503253)
Milbank, Tweed, Hadley & McCloy, LLP
1850 K Street, NW, Suite 1100
Washington, DC  20009
Telephone:  (202) 835-7524
Facsimile:  (202) 263-7524
mnolan@milbank.com
snewell@milbank.com

*Attorneys for Plaintiff ASARCO, INC.*

# MILBANK, TWEED, HADLEY & McCLOY LLP

### 601 SOUTH FIGUEROA STREET

### THIRTEENTH FLOOR

### LOS ANGELES, CA 90017-5765

———

213-892-4000

FAX: 213-629-5063

NEW YORK
212-530-5000
FAX: 212-530-5219

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-207-448-3000
FAX: 44-207-448-3029

FRANKFURT
49-69-71914-3400
FAX: 49-69-71914-3500

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

TOKYO
813-3504-1050
FAX: 813-3595-2790

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

GREGORY EVANS
PARTNER
DIRECT DIAL NUMBER
213-892-4488
FAX: 213-892-4788
E-MAIL: gevans@milbank.com

April 22, 2008

Region 7 FOIA Office
Attn: Records Request

    Re:   <u>ASARCO Inc.</u>

Dear Sir or Madam:

    On behalf of ASARCO Incorporated, I hereby request any records regarding the Recontamination Study at the Omaha Lead Superfund Site located in Omaha, Nebraska (EPA ID# NESFN070348) including, but not limited to, data, communications records, reports, work plans, and any other documentation related to the aforementioned Study. Please forward any records to Gregory Evans c/o Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017.

    Please contact me at 213-892-4488 for any additional clarification. Thank you.

    Very truly yours,

    Gregory Evans /PV.

    Gregory Evans

cc:    Sue Casteel (ATSDR)

LA1:#6378446



EXHIBIT

1

MAY 15 2008 16:53 FR USEPA REGION 7 DEP    913 551 7066 TO 912138924718    P.02/02



# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

### REGION 7
### 901 NORTH 5TH STREET
### KANSAS CITY, KANSAS 66101

May 15, 2008

Mr. Gregory Evans
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, Thirteenth Floor
Los Angeles, CA 90017

Freedom of Information Act (FOIA), 5 U.S.C. 552
Request #: 07-RIN-00370-08

Dear Mr. Evans:

This is in response to your April 22, 2008, request for information regarding the Recontamination Study at the Omaha Lead Superfund Site.

A review of our records indicates no information responsive to your request.

If you consider this response to be a denial, you may appeal it within 30 calendar days of the date of this letter by addressing your written appeal to EPA Headquarters Freedom of Information Operations Staff (2822T), US Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW, Washington, DC 20460. Your appeal should refer to the RIN number listed above. For quickest possible handling, the appeal letter and its envelope should be marked "Freedom of Information Act Appeal."

The cost to process this request was less than $14.00; therefore, there is no charge.

Sincerely,

Kathleen A. Montalte
Freedom of Information Officer





** TOTAL PAGE.02 **

# MILBANK, TWEED, HADLEY & McCLOY LLP

601 SOUTH FIGUEROA STREET

THIRTIETH FLOOR

LOS ANGELES, CA 90017-5735

———

213-892-4000

FAX: 213-629-5063

GREGORY EVANS
PARTNER
DIRECT DIAL NUMBER
213-892-4488
Fax: 213-892-4788
E-MAIL: gevans@milbank.com

NEW YORK
212-530-5000
FAX: 212-530-5219

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-207-448-3000
FAX: 44-207-448-3029

FRANKFURT
49-69-71914-3400
FAX: 49-69-71914-3500

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

BEIJING
8610-5123-5120
FAX: 8610-5123-5191

HONG KONG
852-2971-4888
FAX: 852-2840-0792

TOKYO
813-3504-1050
FAX: 813-3595-2790

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

May 29, 2008

**VIA COURIER**

EPA Headquarters
Freedom of Information Operations Staff (2822T)
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

RE: ASARCO Inc.-Freedom of Information Act Appeal (Request No. 07-RIN-00370-08)

Dear Administrator:

This is an appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

On April 22, 2008, we made, on behalf of ASARCO Incorporated, a Freedom of Information Act ("FOIA") request to the United States Environmental Protection Agency (the "EPA"), attached hereto as Exhibit A, for "any records regarding the Recontamination Study at the Omaha Lead Superfund Site located in Omaha, Nebraska (EPA ID# NESFN070248), including, but not limited to, data, communications records, reports, work plans, and any other documentation related to the aforementioned study." In a letter dated May 15, 2008, attached hereto as Exhibit B, Kathleen A. Montalte, the Freedom of Information Officer for Region VII of the EPA, denied that request by stating as follows: "A review of our records indicates no information responsive to your request."

The assertion by the EPA that there is no information responsive to the April 22 request is contrary to several statements made by EPA officials that are familiar with the Omaha Lead Superfund Site. For example, at a May 9, 2007 meeting of the Community Advisory Group for the Omaha Lead Site, Bob Feild, the project coordinator for the Omaha Lead Superfund Site, stated that the EPA (by and through its contractor, Black and Veatch Corp.) planned to collect samples for the Recontamination Study during the summer of 2007 and


EXHIBIT
3
ALL-STATE LEGAL®

MILBANK, TWEED, HADLEY & McCLOY LLP

Freedom of Information Operations Staff
May 29, 2008
Page 2

07-RIN-00370-08 (FOIA Appeal)

evaluate the data over the winter of 2007-2008.  See CAG for the Omaha Lead Site, Minutes for Meeting Held, dated June 13, 2007, attached hereto as Exhibit C, at 3-4.

Additionally, both Mr. Feild and Rex Eugene Gunn, Jr., the EPA Region VII branch chief in the Superfund Program, testified under oath at a August 6, 2007 hearing before the United States Bankruptcy Court for the Southern District of Texas that the Recontamination Study exists and, more specifically, that data responsive to my request had been collected.  For example, Mr. Gunn testified as follows: "We designed the study, collected the information.  We're looking at the data now.  And a report is forthcoming…."  See Tr. Rex Eugene Gunn, Jr., relevant excerpts of which are attached hereto as Exhibit D, at 75, 82-83.  With regard to the expected timeframe of the Recontamination Study, Mr. Gunn further testifies that "[the EPA] hasn't done anything to slow down."  See Exhibit D, at 84.

Based upon the above statements made by employees of the EPA, ASARCO Incorporated trusts that upon re-consideration, you will reverse the decision denying access to this material and grant the original request.  If the EPA's denial of the original FOIA request was based on the fact that such documents were in the possession of the EPA's contractor for the Recontamination Study, Black and Veatch Corp, please note that such records remain legally within the EPA's control for FOIA purposes.  See, e.g., Burka v. U.S. Dep't of Health and Human Services, 87 F.3d 508, 515 (D.C. Cir. 1996).

We look forward to receiving your decision within 20 business days, as required by statute.  Please contact me at (213) 892-4488 if clarification or additional information could be useful to you.

Thank you for your consideration.

Very truly yours,

Gregory Evans

Gregory Evans

Attachments

# EXHIBIT A

## MILBANK, TWEED, HADLEY & McCLOY LLP

### 601 SOUTH FIGUEROA STREET
### THIRTEENTH FLOOR
### LOS ANGELES, CA 90017-5765

213-892-4000
FAX: 213-629-5063

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-207-448-3000
FAX: 44-207-448-3029

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**GREGORY EVANS**
PARTNER
DIRECT DIAL NUMBER
213-892-4488
FAX: 213-892-4788
E-MAIL: gevans@milbank.com

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**TOKYO**
813-3504-1050
FAX: 813-3595-2790

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

April 22, 2008

Region 7 FOIA Office
Attn: Records Request

    Re:   <u>ASARCO Inc.</u>

Dear Sir or Madam:

      On behalf of ASARCO Incorporated, I hereby request any records regarding the Recontamination Study at the Omaha Lead Superfund Site located in Omaha, Nebraska (EPA ID# NESFN070348) including, but not limited to, data, communications records, reports, work plans, and any other documentation related to the aforementioned Study. Please forward any records to Gregory Evans c/o Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017.

      Please contact me at 213-892-4488 for any additional clarification. Thank you.

    Very truly yours,

*Gregory Evans /PV.*

Gregory Evans

cc:   Sue Casteel (ATSDR)

LA1:#6378446

# EXHIBIT B



# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**REGION 7**
**901 NORTH 5TH STREET**
**KANSAS CITY, KANSAS 66101**

May 15, 2008

Mr. Gregory Evans
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, Thirteenth Floor
Los Angeles, CA 90017

Freedom of Information Act (FOIA), 5 U.S.C. 552
Request #: 07-RIN-00370-08

Dear Mr. Evans:

This is in response to your April 22, 2008, request for information regarding the Recontamination Study at the Omaha Lead Superfund Site.

A review of our records indicates no information responsive to your request.

If you consider this response to be a denial, you may appeal it within 30 calendar days of the date of this letter by addressing your written appeal to EPA Headquarters Freedom of Information Operations Staff (2822T), US Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Avenue, NW, Washington, DC 20460. Your appeal should refer to the RIN number listed above. For quickest possible handling, the appeal letter and its envelope should be marked "Freedom of Information Act Appeal."

The cost to process this request was less than $14.00; therefore, there is no charge.

Sincerely,

Kathleen A. Montalte
Freedom of Information Officer



** TOTAL PAGE.02 **

# EXHIBIT C

# Community Advisory Group (CAG)
## for the
# Omaha Lead Site
Minutes for Meeting Held
Wednesday, May 9, 2007, 9:30 a.m.
Chicano Awareness Center
4821 S. 24th Street
Omaha, NE 68107

**OLS CAG Members Present:**
Rebecca Barrientos-Patlan—*Burlington Road Neighborhood Association*
Sue Casteel—*Agency for Toxic Substances and Disease Control*
Brenda Council—*OLS CAG Facilitator*
Todd Davis—*Nebraska Department of Environmental Quality*
Connie Determan—*MFG, Inc.*
Kara Eastman—*Omaha Healthy Kids Alliance*
Bob Feild—*U.S. Environmental Protection Agency*
Nick Flattery—*OneWorld Community Health Center*
Clifton Jones—*U.S. Department of Housing and Urban Development*
Connie Lowndes (designee for Vernon Waldren)—*University of Nebraska, Lincoln Extension*
Jeff McDermott—*Union Pacific Railroad*
Dr. Adi Pour—*Douglas County Health Department*
Vicki Quaites-Ferris—*City of Omaha Mayor's Office*
Chris Rodgers—*Douglas County Board of Commissioners*
Marian Todd—*City of Omaha Planning Department*
Rebecca Valdez—*Chicano Awareness Center*
Diane Ward—*Creighton University Department of Pediatrics*
Cheryl Weston—*Lead Safe Omaha Coalition*

**Others Present:**
Mary Castaneda—*EPA Information Offices*
Lelia Coyne—*Citizen*
Felisa Dillon— *EPA Information Offices*
Nancy Gaarder—*Omaha World-Herald*
Tina Gray-Ventry—*Lead Safe Omaha Coalition*
Laura Hardesty—*Cadmus Group*
Andrew Herman—*Marc Environmental Services*
Steve Jackson—*Nebraska Health and Human Services*
Tom Janssen—*Senator Chuck Hagel's Office*
Debbie Kring—*U.S. Environmental Protection Agency*
Louise Latimer—*Senator Ben Nelson's Office*
Kathy Leinenkugel—*Douglas County Health Department*
Stacy Meacham—*MFG, Inc.*

Mia Price—*Charles Drew Health Center*
Jennifer Rawley—*MFG, Inc.*
Steve Sanders—*U.S. Environmental Protection Agency*
Che Thompson—*Omaha Healthy Kids Alliance*

Ms. Council thanked Mr. Waldren for facilitating the April meeting. Ms. Council congratulated Ms. Barrientos-Patlan for the City's recognition of her work. Ms. Council congratulated Dr. Pour on receiving the J.G. Elliot award.

### 1. Discussion on Minutes from the March 14, 2007 and April 11, 2007 Meetings

Ms. Council asked for any corrections or additions to the March and April CAG meeting minutes. Ms. Weston motioned to approve the March minutes as drafted. Mr. Jones seconded the motion. The motion was unanimously approved (11-0).

Ms. Council noted that on pages two and seven of the April minutes, "Ms. Council" should read "Mr. Waldren." Ms. Weston motioned to approve the April minutes with Ms. Council's correction. Mr. Jones seconded the motion. The motion was unanimously approved (11-0).

### 2. EPA Update

Mr. Feild reported that EPA is still finalizing the large park and treatability study work plans.

Mr. Feild reported that Coastal Environmental has begun soil excavations, and Prudent Technologies is mobilized.

Mr. Feild stated that he anticipates that the U.S. Corps of Engineers interagency agreement will be signed by the end of May, allowing ECC to begin soil excavations in early June.

Mr. Feild reported that HydroGeoLogic (HGL) will be performing data management and quality assurance monitoring of soil remediation contractors.

Ms. Council stated that last week's Omaha Star included a column on the issue of North Omaha EPA contractors. Ms. Council stated that the article raised a question about ER's affiliation with Coastal Environmental. Mr. Feild replied that ER is a subcontractor of Coastal Environmental. Mr. Feild stated that contractors are not required to obtain consent for hiring subcontractors. Ms. Council stated that the article reported that ER was cited for a number of violations last year. Mr. Feild stated that ER was not cited for violations by EPA. Mr. Feild stated that ER's contract was terminated as a "matter of convenience." Ms. Weston asked if ER's contract was terminated because of the wage rate issue. Mr. Feild stated that the wage rate issue was one considered factor. Mr. Feild stated that EPA did not assign any judgment, blame, or reason when terminating the

contract. Ms. Weston asked EPA to provide a definition of "terminated for convenience."

Ms. Council stated that an employment add for a staff position at the North Omaha EPA Public Information Center was also in the Omaha Star. Ms. Council asked if EPA is adding or replacing staff. Mr. Feild replied that he heard Ms. Dillon is accepting a new position within ASW.

Mr. Feild reported that EPA is still working on drafting a paint stabilization fact sheet and flow chart of all EPA activities homeowners will be asked to participate in at the Omaha Lead Site.

Mr. Feild reported that EPA's contractor, Black and Veatch, will perform a recontamination study this summer. Mr. Feild stated that EPA does not have a work plan yet. Ms. Council asked what the objective of the study will be and what properties will be sampled. Mr. Feild replied that EPA has a conceptual plan that includes sampling 30 to 50 properties where soil cleanup has been performed. Mr. Feild stated that the purpose of the study will be to determine if soil replaced by EPA is being recontaminated from deteriorated exterior lead-based paint. Mr. Feild stated that EPA will measure the concentration of lead in soil every six inches up to ten feet from the side of the house, at two locations, using an XRF. Mr. Feild stated that the data collected from the recontamination study will be used to predict the potential for recontamination of yards to occur, based on the condition and lead content of exterior paint. Mr. Feild stated that the data will assist EPA in developing criteria to determine which houses will be eligible for paint stabilization. Mr. Feild stated that the criteria will be finalized in the final Record of Decision for the site, in December of 2008.

Dr. Pour asked if EPA's recontamination study will be a true study with scientific value and if Black and Veatch is able to do this. Mr. Feild replied that EPA understands the significance of the study and that EPA will thoroughly review the study plan. Mr. Feild stated that Black and Veatch is capable of performing the study.

Dr. Pour asked what the study will cost and how it will be funded. Mr. Feild replied that pipeline money, not remedial funding, will be used to perform the study. Mr. Feild stated that sampling will cost less than $100,000 and other costs will include an outside review.

Ms. Eastman asked what EPA will do if the study shows that recontamination is occurring. Mr. Feild replied that determining any course of action would be a part of EPA's final decision-making, when developing the final Record of Decision. Mr. Feild stated that EPA committed in the Interim Record of Decision to address the issue of recontamination, but did not define what "address" means or include specific criteria.

Mr. Janssen asked if EPA has performed recontamination studies at similar sites. Mr. Feild replied that he is not aware of any other studies. Mr. Feild stated that the Omaha Lead Site is the first Superfund site where paint will be addressed on such a large scale.

Mr. Janssen asked when the study will be performed and completed. Mr. Feild replied that EPA plans to collect samples this summer, evaluate the data over the winter, and develop any decisions based on that data in December of 2008.

Ms. Council asked how the recontamination study and the criteria to be developed from the recontamination study differ from the dripzone study and the criteria that were previously developed utilizing a complicated formula. Mr. Feild replied that EPA initially tried to develop criteria for eligibility of paint stabilization by performing a dripzone study to determine how far away from a house paint would fall and be mixed into soil. Mr. Feild stated that EPA initially thought this approach was sound, but because of added scrutiny, EPA decided to collect additional data (the recontamination study).

Ms. Council asked if EPA is only planning to perform exterior paint stabilization where kids are living. Mr. Feild replied that EPA prioritizes homes where children reside. Ms. Eastman asked if EPA will look at stabilizing paint on abandoned homes. Mr. Feild replied that EPA does not prioritize abandoned homes. Mr. Feild stated that EPA is ranking the homes where paint stabilization will occur, although it is not a strict ranking. Dr. Pour asked if the recontamination study will refine what EPA did in developing a criteria formula. Mr. Feild stated that EPA anticipates that as many as half of the properties eligible for soil removal will also be eligible for paint stabilization. Mr. Feild stated that EPA has directed the City to begin addressing the homes with the worst condition of exterior lead-based paint this year and next year, as these homes will clearly meet any established criteria.

Ms. Latimer asked how EPA will make sure that exterior paint stabilization is performed before soil removal, so that EPA will not have to backtrack. Mr. Feild replied that EPA is trying to get ahead of soil removals, but that last year's paint assessments were only performed on homes where soil had already been replaced. Mr. Feild stated that EPA plans to perform paint assessments where soil has not yet been replaced and insert those homes into the prioritized list of homes where the City will do exterior paint stabilization.

Ms. Quaites-Ferris asked why Omaha has been selected for a recontamination study. Ms. Quaites-Ferris stated that it would be helpful to learn the results of the recontamination study as soon as possible to start determining how EPA will address the recontamination. Ms. Quaites-Ferris asked if EPA has thought about how they will address recontamination. Mr. Feild replied that EPA's guidance allows EPA to use Superfund money to address lead-based paint when it threatens EPA's remedy. Mr. Feild stated that EPA will look at other mechanism of funding first, and if none are available, EPA will use Superfund money to address the recontamination. Mr. Feild stated that EPA committed to including exterior paint stabilization in the remedy.

Ms. Quaites-Ferris asked if Omaha will be a model for other cities. Mr. Feild replied that what is decided at the Omaha Lead Site will be considered in future decision-making at other sites.

Ms. Weston asked if it is true that EPA has never stabilized paint before. Ms. Weston stated that Mr. Gene Gunn of EPA told Governor Johanns years ago that EPA could do paint stabilization if recontamination is a concern, leading Ms. Weston to believe that EPA has dealt with recontamination before. Mr. Feild replied that EPA has performed paint stabilization at other sites, but not on as large a scale as the Omaha Lead Site. Ms. Weston stated that because recontamination has been addressed before, EPA may not need to do a study. Mr. Feild stated that criteria for paint stabilization were not developed at other sites. Ms. Eastman stated that it is disconcerting to hear that EPA will be spending money on a recontamination study, when Girls, Inc. is able to identify the issue of recontamination by observing paint flaking into soil at a daycare. Mr. Feild stated that spending money on a study will in no way impact progress in addressing lead-based paint.

Ms. Council asked what EPA would do if the study determines that, for example, only ten percent of the homes the City will have stabilized met the criteria. Mr. Field replied that paint stabilization will only be performed on homes that meet eligibility criteria, and response actions must meet those criteria to be cost-recoverable.

Mr. Davis asked that the CAG keep in mind that EPA, like NDEQ, has limited authority. Mr. Davis stated that, for example, NDEQ receives phone calls about radon, but does not have the authority to address indoor air, so NDEQ refers those calls to the health department. Mr. Davis stated that EPA, likewise, is limited with what they can address on the outside of homes. Mr. Davis stated that HUD is able to address lead-based paint, and EPA can address soil. Mr. Davis stated that EPA is trying to expand and do what they can to protect the soil, which is why EPA will perform a recontamination study. Mr. Davis stated that Omaha is getting much HUD funding. Mr. Davis stated that more funding is needed to deal with deteriorating paint before soil remediation. Ms. Eastman stated that she understands EPA limitations, but that more logical steps could be taken to make sure that the children are the focus. Ms. Council stated that the issue is not an authority issue. Ms. Council stated that what the CAG is asking for is what is already in the EPA's Interim Record of Decision. Ms. Council stated that EPA's Interim Record of Decision states that EPA will address paint if there is a potential for it to recontaminate the soil. Ms. Council stated that the issue is how EPA will accomplish what is set forth in the Interim Record of Decision.

Mr. Steinkraus asked if EPA provides a copy of the paint assessment to the property owner. Mr. Feild replied that EPA has not yet transmitted results to property owners, but that EPA is required to provide property owners with environmental data.

Ms. Weston asked if contractors noticing obvious lead-based paint problems could notify the City or EPA to coordinate the paint assessment prior to excavating the property. Mr. Feild replied that nothing prevents the contractor from doing so. Ms. Council asked what would encourage the contractors to notify EPA. Ms. Weston asked if EPA could encourage the contractor to contact EPA if they notice obvious deteriorating lead-based paint, so that the paint issue could be addressed before the soil is replaced. Mr. Feild stated that when the contracts were put in place, EPA did not place such a condition in

the contract. Ms. Weston stated that EPA could substitute a property for the contractor, ensuring that EPA would not have to return to the property two years later to redo the soil remediation. Mr. Feild stated that the contractors can ask for a property to be substituted. Mr. Feild expressed concern in asking the contractors to do anything additional. Mr. Feild stated that at the end of the contract last year, ER submitted claims for additional requirements that were outside their original scope.

Ms. Weston asked if future contracts could include a requirement for contractors to notify EPA if it is obvious that lead-based paint on a particular property threatens the remedy. Mr. Feild replied that EPA could consider such a requirement, once a database is developed to determine which homes are eligible for exterior paint stabilization. Ms. Thompson asked if there is anything the CAG could do to assist EPA in including such requirements in future contracts. Mr. Feild stated that he is aware of the interest and cannot think of anything the CAG could do to help.

Ms. Barrientos-Patlan stated that her children witnessed trucks hauling dirt without covers. Ms. Barrientos-Patlan stated that she wished to reiterate her concern that dirt is being distributed in the community.

Mr. Feild stated that EPA is not the only solution. Mr. Feild stated that EPA will only be addressing soil at a portion of the homes in Omaha, and lead-based paint will be addressed at only a portion of those homes. Mr. Feild urged OHKA to find other funding sources to address lead-based paint in Omaha homes. Mr. Feild stated that the issue is not what EPA is working on; the issue is finding community funding.

Ms. Council stated that EPA is spending $15,000 per yard and looking at possibly having to do soil replacements twice at 2,500 properties. Ms. Council stated that this is a big concern. Ms. Council stated that millions of taxpayer dollars are being spent and EPA will potentially have to do the soil remediation work over again because of recontamination from lead-based paint. Ms. Council stated that the spending of HUD dollars and other sources is a separate and distinct issue from the issue of having to come back and readdress properties that were not done right the first time.

Mr. Feild stated that it is a mischaracterization to say that the yards will be recontaminated. Mr. Feild stated that there is some potential for recontamination, but EPA does not know if recontamination will result in concentrations of lead in soil that are of concern. Mr. Feild stated that EPA does not believe that recontamination is significant. Mr. Feild stated that EPA may only need to address the foundation soil at some homes.

Mr. Janssen stated that the CAG's main concern is protecting families and children. Mr. Janssen asked the CAG to imagine the future, when EPA is long gone, and it is found that millions of dollars were spent and Omaha has the same problem as before because of recontamination. Mr. Janssen asked what the CAG will say when others in the community ask why the CAG let this happen. Mr. Janssen stated that if lead in Omaha is going to be addressed, it needs to be done right.

Mr. Feild stated that EPA needs to continue to address soil because EPA believes soil contamination is an immediate concern to children. Mr. Janssen reiterated that the concern is that it be done correctly, so that money does not need to be spent in the future to fix it. Mr. Feild stated that EPA does not know if recontamination will even occur. Mr. Janssen asked if EPA can speed up the timeline for the recontamination study. Mr. Feild replied that EPA expects to have the data from the study this summer. Mr. Janssen stated that Mr. Feild had previously said that conclusions and recommendations would not be made until 2008. Mr. Feild stated that EPA will have a sense of whether or not recontamination is occurring this summer. Mr. Feild stated that EPA does not believe paint is a primary source of contamination in soil.

Ms. Weston asked if EPA's new Oracle database will be maintained by Black & Veatch. Mr. Feild replied that EPA's data management will be in-house.

Ms. Weston asked about the current legal standing with Potentially Responsible Parties (PRPs). Mr. Sanders replied that EPA does not talk about enforcement. Mr. Sanders stated that EPA has continuing dialogue with the PRPs. Ms. Weston stated that she thought a legal document had been presented to the PRPs that was public information. Mr. Sanders stated that an order was issued to Union Pacific Railroad in March of 2005, but nothing additional has been issued since that date. Ms. Weston asked if the CAG would be informed if and when EPA decides to move forward with litigation. Mr. Sanders stated that the CAG cannot know, as talking about the issue would compromise EPA's case. Mr. Sanders stated that EPA has not filed for litigation yet. Mr. Sanders stated that EPA is currently in bankruptcy proceedings with Asarco.

Ms. Weston asked about the expansion of site boundaries. Mr. Feild stated that the current boundaries were emailed to Ms. Rawley. Ms. Leinenkugel requested that the new map be emailed to the CAG. Ms. Rawley stated that she would forward the map to the group.

Mr. Feild stated that EPA will do statistical work this summer to determine which yards are likely contaminated by Asarco, to determine final site boundaries of properties eligible for soil replacements. Ms. Weston asked if Black & Veatch has started sampling. Mr. Feild stated that soil, dust, tap water, and other media will be sampled this summer in order to collect data for the final risk assessment.

Mr. Rodgers asked how EPA determined the extended boundaries, knowing that the boundaries do not follow wind patterns. Mr. Feild replied that EPA found properties with high lead in soil levels at the original focus area boundary, so EPA extended the boundaries to the north, south, and west to further define the extent of lead contamination.

Ms. Barrientos-Patlan asked how many properties south of "L" Street have been sampled. Mr. Feild replied that he did not know, but would report the number at the next CAG meeting.

### 3. Minority Health Consortium

Ms. Council introduced Mr. Steve Jackson from the Minority Health Consortium. Mr. Jackson described the Minority Health Consortium. Mr. Jackson stated that lead is not a currently-listed initiative. Mr. Jackson explained that the second congressional district is ineligible to apply for funds through the Minority Health Consortium. Ms. Council questioned the district's ineligibility, given that a high percentage of the State's minority population resides within the second congressional district. Ms. Council encouraged Mr. Jackson to attend future CAG meeting.

### 4. 2006 Blood Lead Levels

Mr. Steinkraus presented 2006 childhood blood lead data for Douglas County.

Mr. Steinkraus reported that 127 children with blood lead levels requiring case management were living in homes with lead-based paint hazards. Mr. Steinkraus stated that 12 children requiring case management were found living in homes without lead-based paint hazards; however, lead-based paint hazards were often found in secondary homes, where these children frequently visited.

Mr. Steinkraus stated that he does not have 2006 EPA soil data with which to compare the blood lead data.

Ms. Weston expressed concern that Omaha Housing Authority properties are not being properly inspected. Ms. Council stated that she has urged the Omaha Housing Authority to send a representative to CAG meetings.

Ms. Barrientos-Patlan stated that, in July, the PM-10 monitor in South Omaha will be up for evaluation and may be removed. Ms. Barrientos-Patlan stated that it is important for the monitor to remain in South Omaha for the protection of the community, just as the rest of Omaha is protected. Ms. Barrientos-Patlan asked if the CAG could assist her in ensuring that the monitor remains in place. Dr. Pour stated that it is not necessary to get involved yet. Dr. Pour stated that the health department will review the results from the monitor from the last year and then report back with a recommendation.

### 5. Lead-Based Paint on Playground Equipment

Mr. Steinkraus distributed data tables with lead-based paint data from the City for playgrounds. Mr. Steinkraus stated that, in June of 2005, accompanied by a City parks manager, he tested older playground equipment at 49 parks. Mr. Steinkraus stated that lead-based paint was found in 22 of the parks. Mr. Steinkraus reported that most of the equipment was subsequently repainted and some of the equipment was replaced. Mr. Steinkraus stated that he advised the City to maintain the painted surfaces or replace the equipment.

### 6. Education Committee Update

Ms. Lowndes provided an update on the Education Committee. Ms. Lowndes stated that the committee discussed the Orlando conference and is in the process of updating and prioritizing the education matrix. Ms. Lowndes stated that work groups will be formed based on the prioritization of the matrix.

Ms. Council stated that the revised draft briefing book was included in the CAG package. Ms. Council asked CAG members to review the briefing book and be prepared to vote on the revisions at the next CAG meeting.

### 7. OHKA Update

Ms. Eastman provided an update on OHKA activities. Ms. Eastman stated that OHKA is applying for a HUD grant. Ms. Eastman stated that OHKA is embarking on a path to deal with lead-based paint hazards in housing. Ms. Eastman stated that information about the lead hotline was presented on WOWT.

### 8. City Update

Ms. Todd provided an update on City activities. Ms. Todd stated that the first batch of homes for paint stabilization will go out for bid this week. Ms. Todd stated that, initially, four batches will be completed within four quadrants of the Omaha Lead Site. Ms. Todd stated that 11 contractors are approved for bidding.

Ms. Todd reported that the City is applying for a HUD lead hazard reduction demonstration grant, which would provide additional funding for lead hazard control. Ms. Todd stated that a draft letter of support from the CAG was distributed in the CAG packages. Ms. Todd motioned to approve the letter as drafted. Ms. Weston seconded the motion. The motion was unanimously approved (10-0).

Ms. Todd announced that a one-day painter and remodeler lead safety training course will be held on June 29, 2007.

### 9. NDEQ Update

Mr. Davis provided an update on NDEQ activities. Mr. Davis reported that he is working on obtaining a letter of support from the governor for the City's HUD grant application.

Mr. Davis stated that he is working with the onsite EPA coordinator to ensure that loess soil is preserved. Mr. Feild added that EPA's contractors are prohibited from taking loess soil.

### 10. LSOC Update

Ms. Weston thanked those who attend the presentation at North High School.

Ms. Weston stated that it was rumored in an Omaha Star article that LSOC is a subcontractor to EPA. Ms. Weston stated that, at this time, LSOC does not have a formal contract.

Ms. Weston stated that, due to a scheduling conflict, Niton will not be providing lead testing on May 15, 2007. Ms. Weston stated that another date will be arranged.

Ms. Weston declined Ms. Thompson's offer at the April meeting to head the School Task Force.

Ms. Council stated that she was approached by an individual who worked for a former EPA contractor. M. Weston stated that the individual was questioning the current hiring process. Ms. Council asked what percentage of local individuals who worked for EPA contractor last year has found employment with the new contractors. Ms. Weston replied that Prudent Technologies has hired some of the local workers, but she did not know how many. Ms. Weston stated that she suggested that workers who attended the Coastal Environmental job fair follow-up with EPA because the job fair did not serve its purpose. Ms. Weston stated that interviews were not held. Ms. Weston stated that one individual, a female truck driver, felt discriminated against. Ms. Weston stated that EPA cannot force their contractors to hire local workers, but should be made aware of the situation. Ms. Weston added that the job fair was held across the river, even though free meeting space in Omaha was offered.

Ms. Barrientos-Patlan asked why the contractors were not present at the CAG meeting. Mr. Feild replied that contractors are not paid to deal with these situations. Mr. Feild stated that there are established channels to deal with contractors.

**11. Other Agency Updates**

Ms. Leinenkugel stated that the updated EPA focus area map is included in the draft briefing book.

Ms. Price announced that an upcoming health fair and blood drive will be held at Charles Drew Health Center.

**12. Questions and Answers**

Ms. Council stated that the next CAG meeting will be held on June 13, 2007 at 9:30 a.m. The location is to be announced.

Handouts Provided for the Meeting (May 9, 2007):

*Draft CAG Meeting Minutes from 3/14/07 and 4/11/07*

*Lead Poisoning Workshop Notice (Provided by Kara Eastman)*

*Draft Briefing Materials for the OLS CAG*

*Proposed Letter of Support (Provided by Marian Todd)*

*Lead-Based Paint as a Source of Recontamination (Provided by MFG, Inc.)*

*Two New Studies on Lead Safe Work Practices (Provided by MFG, Inc.)*

*City of Omaha Lead Hazard Control Grantee Quarterly Report (Provided by Marian Todd)*

*Letter to Administrator Johnson Dated April 3, 2007*

*Letter to U.S. Preventative Services Task Force dated April 16, 2007*

*UPRR Comments on EPA/ATSDR Draft Fact Sheet (Provided by Jeff McDermott)*

*Lead Paint is the Focus of Church Demolition (Provided by MFG, Inc.)*

*$85,000 Grant Helps Group Combat Lead Poisoning (Provided by MFG, Inc.)*

*"Lead Police" Offer Safety Tips (Provided by MFG, Inc.)*

*Lead Test for Children Now Mandated by Law (Provided by MFG, Inc.)*

*EPA Will Cut Lead in Kids' Products (Provided by Kathy Leinenkugel)*

*900,000 Children's Necklaces and Charm Bracelets Recalled (Provided by MFG, Inc.)*

*Ohio Sues Paint Makers for Costs of Lead Hazards (Provided by MFG, Inc.)*

*Obama Announces Legislation that Bans Children's Products Containing Lead (Provided by Kara Eastman)*

*New DVD and Other Resources Available (Provided by MFG, Inc.)*

*EPA Honors Maine, Michigan Programs (Provided by MFG, Inc.)*

*Action Alert – Ask Members of the US House to Protect Children from Lead Poisoning and Asthma (Provided by MFG, Inc.)*

Attachments to Minutes:

*Sign-In Sheet (hardcopy to be delivered)*

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

CORPUS CHRISTI DIVISION


IN RE: ASARCO, . CASE NO. 05-21207
 .
 DEBTOR, . CORPUS CHRISTI, TEXAS
 . MONDAY, AUGUST 6, 2007
. . . . . . . . . . . . . . . . . . 8:58 A.M. TO 5:51 P.M.


BAND ONE HEARING

SOME PARTIES APPEARING TELEPHONICALLY

BEFORE THE HONORABLE RICHARD SCHMIDT
UNITED STATES BANKRUPTCY JUDGE

Trinity Transcription Services

122 Trinity Oaks Circle

The Woodlands, TX 77381

281-296-2290

UNITED STATES BANKRUPTCY COURT


SOUTHERN DISTRICT OF TEXAS


CORPUS CHRISTI DIVISION



IN RE: ASARCO, . CASE NO. 05-21207

 .

 DEBTOR, . CORPUS CHRISTI, TEXAS

 . MONDAY, AUGUST 6, 2007

. . . . . . . . . . . . . . .. 8:58 A.M. TO 5:51 P.M.



BAND ONE HEARING


SOME PARTIES APPEARING TELEPHONICALLY


BEFORE THE HONORABLE RICHARD SCHMIDT

UNITED STATES BANKRUPTCY JUDGE

DIRECT EXAMINATION:

BY MR. DAIN:

Q Would you state your name for the record?

A My name is Rex Eugene Gunn, Junior.

Q Mr. Gunn, where do you work?

A I work for the United States Environmental Protection Agency in Kansas City, Kansas. That's EPA Region VII.

Q And what do you do?

A I'm a branch chief in the Superfund Program with primary responsibility for federal facilities and the clean up of mining sites in the region.

Q And specifically, what's the nature of your responsibilities in that office?

A I supervise remedial project managers or project managers that usually investigation [sic] ⬜⬜ oversee the investigation and clean up of those kinds of sites.

Q And is there a lot of lead problems in the Region VII matter that you are charged with reviewing?

A Region VII has a great many lead sites, probably have 13 active projects right now. The state of Missouri was the largest lead producing state in the country for a good period of time. And there are numerous smelter, probably over 120 smelter, former smelter sites and 6,000 to 7,000 historic mining sites in the region in that state alone. And then we also have lead sites in the state of Kansas.

Q Have you submitted a proffer in this matter?

A Yes, I have.

Q All right. As I mentioned a moment ago, I'm not going to walk through the proffer on your direct examination. But there were a couple of points that was decided that we'd try to bring out, or highlight, that weren't clarified in the proffer. Is that correct?

2000?

A They were, yes.  One much earlier.  But yes, by 2000, they were both remediated.

Q And finally, in paragraph 24 of your proffer, you mention EPA's 1999 action memorandum and a health consult from ATSDR on EPA's action that was proposed in 1999?

A Yes.

Q And with respect to that action memorandum, you state that ATSDR concluded that the proposed action was likely to reduce blood lead levels in Omaha.

A Yes.

Q Did EPA implement the proposed action that's mentioned in paragraph 24 of your proffer at the Omaha lead site?

A Referring to?

Q Referring to the action memorandum dated August 2nd, 1999?

A We did implement that action memorandum, yes.

Q Okay.

 MS. FERRELL:  I have no further questions, your Honor.

 THE COURT:  All right.  Anyone else?  Union Pacific or Asarco, Inc.?  All right.

 (Pause)

CROSS EXAMATION

BY MR. EVANS:

Q Gregory Evans on behalf of Asarco, Incorporated.

 Mr. Gunn, you were present in the courtroom during the opening statements?

A Yes, I was.

Q Mr. Gunn quickly, are you responsible for the recontamination study that was mentioned?

A I'm the supervisor of a branch.  And one of my project managers is the person

responsible for overseeing that investigation.

Q So as the supervisor of the branch, you're responsible then for the outcome on that investigation?

A Yes.

Q And what are the results of that right now?

A We don't have the results of that yet.

Q Is there any reason why we don't have the results?

A I don't know the answer to that.  The investigation isn't complete and the report isn't complete.

Q You're aware that the Court is very interested in the results of that recontamination study, are you not?

A I think I do know now, yes.

Q Have you done anything to expedite those results?

A I really can't answer that no.  We've done the study in the normal.  We designed the study, collected the information.  We're looking at the data now.  And a report is forthcoming, but ⸍⸍

Q And recontamination is a serious enough issue for you to have initiated that study, isn't it?

A We need to investigate that.  At the other two lead sites that I talked about, Galena and Jasper County, we remediated only soils there, didn't do paint, and didn't to interior dust.

 And we significantly reduced blood lead levels in both of those cases without addressing paint ⸍⸍

 MR. EVANS:  We move to strike ⸍⸍

 THE WITNESS:  ⸍⸍ and we follow on health studies.

Page 84

THE COURT:  Well are you □□ I don't know.

MR. EVANS:  I didn't ask for that.  I don't know where that comes from.

THE COURT:  Are you objecting to his answer?

MR. EVANS:  Yes.

THE COURT:  You moving □□

MR. EVANS:  I'm moving to strike as non-responsive.

THE COURT:  Okay.  I mean, I'm not going to strike it.  But go ahead.  You can ask another question if you want.

BY MR. EVANS:

Q This is an important issue.  The recontamination issue is very important to EPA, correct?

A It is.  Yes.  We wouldn't be doing the study if it wasn't.

Q And we're here today to present a fair and accurate picture to this Court regarding the status of this site, correct?

A Correct.

Q And you haven't done anything to expedite that study so that the Court could see whether recontamination was occurring, have you?

A We haven't done anything to slow it down.

Q Have you done anything to expedite it?

A No.

Q And you're capable of expediting results, aren't you?

A Not necessarily.

Q Have you done it in the past?

A Yes, probably.

 MR. EVANS:  Nothing further, your Honor.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C.  20460

OFFICE OF
GENERAL COUNSEL

June 3,  2008

Gregory Evans
Milbank, Tweed, Hadley & McCloy, LLP
601 South Figueroa Street - Thirtieth Floor
Los Angeles, CA 90017-5735

Re: Freedom of Information Act Appeal 07-RIN-00370-08-A (HQ-APP-00086-08)

Mr. Evans:

This letter is being sent to acknowledge receipt of your FOIA appeal received in the Office of General Counsel on May 30, 2008.

Sincerely,

Barbara Bruce

Barbara Bruce
FOIA Specialist
Finance and Operations Law Office

EXHIBIT
4

ALL-STATE LEGAL®

Internet Address (URL)  ●  http://www.epa.gov
**Recycled/Recyclable** ● Printed with Vegetable Oil Based Inks on 100% Postconsumer, Process Chlorine Free Recycled Paper

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

---

**I (a) PLAINTIFFS**

ASARCO, Incorporated
1180 Maiden Lane
New York, NY 10038

**DEFENDANTS**

United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF         88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT         11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael D. Nolan
Sean M. Newell
Milbank, Tweed, Hadley, & McCloy, LLP
1850 K. Street NW, Suite 1100
Washington, DC 20006
(202) 835-7524

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
     Plaintiff

○ 3 Federal Question
     (U.S. Government Not a Party)

◉ 2 U.S. Government
     Defendant

○ 4 Diversity
     (Indicate Citizenship of
     Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**        **OR**        ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☐ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

| ○ **G. _Habeas Corpus/ 2255_** | ○ **H. _Employment Discrimination_** | ⊙ **I. _FOIA/PRIVACY ACT_** | ○ **J. _Student Loan_** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☒ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. _Labor/ERISA (non-employment)_** | ○ **L. _Other Civil Rights (non-employment)_** | **M. _Contract_** | ○ **N. _Three-Judge Court_** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C Section 552(a) - Failure to comply with the requirements of the Freedom of Information Act; 5 U.S.C. Section 706

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____  Check YES only if demanded in complaint   **JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  July 30, 2008    SIGNATURE OF ATTORNEY OF RECORD  _Michael D. Nolan_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.