# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ASARCO, Incorporated,

      Plaintiff,

      v.                       Civil Action No. 08-1332 (EGS/JMF)

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

      Defendant.


## MEMORANDUM OPINION
### AND
### REPORT AND RECOMMENDATION

Currently pending and ready for resolution are the following motions: 1) Defendant's Motion for Summary Judgment [#10], 2) Asarco Incorporated's Objection and Motion to Strike Motion for Summary Judgment Used as Opposition to Application for Leave to Take Immediate Discovery [#14], 3) plaintiff's Memorandum in Support of Renewal of Asarco Incorporated's Application for Leave to Take Immediate Discovery ("Plains. Mot. for Discovery") [#24], 4) Defendant's Renewed Motion for Summary Judgment and Opposition to Plaintiff's Renewed Application for Discovery ("Defs. Renewed MSJ") [#30], and 5) defendant's Motion for Extension of Time [#38]. For the reasons stated below, the Court denies plaintiff's motion to take discovery and recommends that defendant's motion for summary judgment be granted.[1]

---

[1] The reader may consult the Court's Memorandum Order of October 9, 2008 [#15] for a recitation of the facts as they will not be repeated herein

## MEMORANDUM OPINION

I.      Plaintiff's Motion to Take Discovery

Asarco insists that it has made a sufficient showing of bad faith to justify discovery that, in turn, precludes the granting of summary judgment until at least that discovery is permitted. Asarco's Reply to the EPA's Opposition to Renewed Application for Discovery and Request for Oral Argument at 3.  But, Asarco has not complied with Rule 56(f) of the Federal Rules of Civil Procedure by showing "by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  See Fed. R. Civ. P. 56(f).  While that requirement might be excused if the need for such discovery was otherwise evident,[2] Asarco cannot overcome other more formidable obstacles.

The first obstacle is the consistent holding in case after case that discovery is not favored in Freedom of Information Act, 5 U.S.C. § 552, as amended, ("FOIA") cases and only allowed under rare circumstances.  While there are phrases in the cases stating that a showing of bad faith is one such circumstance, it must be remembered that the entitlement to discovery occurs when there has emerged a genuine issue of material fact which can only be resolved by an evidentiary hearing.  See Wash. Post Co. v. U.S. Dep't of State, 840 F.2d 26, 38 (D.C. Cir. 1988), reh'ing granted, judgment vacated on other grounds, 898 F.2d 793 (D.C. Cir. 1990); Wash. Post Co. v. HHS, 865 F.2d 320, 326 (D.C. Cir. 1989).  Thus, if an agency claims for example that there is a possibility that harm will come to a certain person if a particular disclosure is made, and that factual assertion is contested such that the court is convinced that reasonable people could differ as to its truth, then summary judgment is inappropriate, as it would be in any case, FOIA or not.

---

[2] First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380-81 (D.C. Cir 1988).

Wash. Post, 865 F.2d at 325.  If, on the other hand, there is no genuine dispute as to how the

agency collected the materials and the exemptions it claimed, there is no need for discovery and

the court must then turn to the adequacy of the search and the legitimacy of the exemptions

claimed.

It is in this context that the concept of "bad faith" must be understood.  If the FOIA

requestor makes a showing of "bad faith" by identifying an obvious deficiency in the agency's

search that is utterly unjustified and inexplicable, a court may allow limited discovery that is

appropriate to the deficiency shown and only where the circumstances suggest reason to impugn

the integrity of the representations made by agency officials.  See e.g., Carney v. U. S. Dep't of

Justice, 19 F.3d 807, 812 (2d Cir. 1994) (showing of bad faith must be sufficient to impugn

agency's affidavits); Judicial Watch v. U.S. Dep't of Commerce, 34 F. Supp. 2d 28, 46 (D.D.C.

1988) (allowing discovery under supervision of Magistrate Judge concerning removal and

destruction of records subject to FOIA subsequent to FOIA request); Caton v. Norton, No. 04-

CV-439, 2005 WL 1009544, at *4 (D.N.H. May 2, 2005) (discovery as to alleged altered

documents permitted in FOIA case).  Stated differently, under those circumstances, there is a

genuine issue of material fact as to whether the agency officials have told the truth in the

representations submitted in support of the agency's motion for summary judgment, and it is

appropriate to permit discovery to test the truthfulness of their contentions.  It therefore follows

that if the exemptions have been properly claimed and the search was adequate, the agency is

entitled to summary judgment.  See Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir.

1981); Moore v. Bush, No. 07-CV-107, 2009 WL 504623, at *3 (D.D.C. Feb. 23, 2009);

Coldiron v. U.S. Dep't of Justice, 310 F. Supp. 2d 44, 48 (D.D.C. 2004); Judicial Watch Inc. v.

Export-Import Bank, 108 F. Supp. 2d 19, 25 (D.D.C. 2000); Judicial Watch of Fl. v. U.S. Dep't of Justice, 102 F. Supp. 2d 6, 10 (D.D.C. 2000).

In this case, Asarco's arguments as to its entitlement to discovery defeat themselves. The central premise of Asarco's claims of bad faith is that it is now self-evident that the agency has engaged in a bad faith search for the documents, motivated in part by the effect a more comprehensive search would have on the government's position in the Texas bankruptcy proceedings. Plains. Mot. for Discovery at 8. According to Asarco, this bad faith is established by the inherent contradictions in what the agency officials have said and by the deficiencies in the search itself. Id. at 8-9.

But, if the record is clear, why does Asarco need discovery? Asarco does not specifically identify the genuine issues of material fact to which such discovery should be devoted. Furthermore, in plaintiff's response to the defendant's statement of material facts not in dispute, plaintiff does not dispute the majority of defendant's statements. See Asarco Incorporated's Statement of Disputed Material Facts [#37-2]. In those instances where plaintiff does dispute a statement, it is either because plaintiff challenges the responding agency official's interpretation of plaintiff's FOIA request, see, e.g., id., at 2 (Response to SMFND No. 5); 8 (Response to SMFND No. 12); 11-13 (Response to SMFND No. 15). In support of its argument, plaintiff relies on the existing record that, as I have noted, it claims makes it indubitably clear that the agency has acted in bad faith and failed to adequately search for records. Thus, Asarco demands discovery in the very document in which it trumpets that the record is already so clear that the government's motion for summary judgment must be defeated. Discovery in a FOIA case, however, is not a punishment for a deficient agency performance. The remedy for such a

4

deficiency is a remand to the agency to complete an adequate search, not discovery.  Because Asarco fails to show how the discovery it seeks is necessary for the resolution of a genuine issue of material fact as to the adequacy of the agency's search, its motion to engage in such discovery may be denied.

II.    The Adequacy of Defendant's Keyword Search

One final argument that plaintiff makes in support of its motion for leave to take discovery is that the electronic word search conducted by Feild, Project Coordinator for the Omaha Lead Superfund site in Omaha, Nebraska, evidences defendant's bad faith.  According to plaintiff, Feild "used only one search term - 'recontamination' - to search the EPA's electronic files, even though using obvious additional search terms would have produced more complete results." Asarco Incorporated's Memorandum of Points and Authorities in Opposition to Defendant's Renewed Motion for Summary Judgment [#37] at 10.  Even though the question of keyword searches is complicated and in fact keyword searches are no longer the favored methodology,[3] plaintiff's point is well taken and warrants one last search of Feild's electronic records.  Therefore, Feild will be ordered to conduct, within seven days of the date of this Memorandum Opinion, another keyword search of his electronically stored files using the following terms, as specified by plaintiff: 1) "recontaminate," 2) "recontaminat," 3) "re-contamination," and 4) "contaminate again."  See id. at 11.

An Order accompanies this Memorandum Opinion.

---

[3] See Equity Analytics, LLC v. Lundin, 248 F.R.D. 331, 332-33 (D.D.C. 2008); United States v. O'Keefe, No. 06-CR-249, 2008 WL 449729, at *8 (D.D.C. Feb. 18, 2008).

## REPORT AND RECOMMENDATION

<u>Defendant's Motion for Summary Judgment</u>

Summary judgment is appropriate if the pleadings "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).  In a FOIA action, federal agencies are called upon to disclose information contained in agency records unless the records fall within one of the enumerated FOIA exemptions. <u>Students Against Genocide v. U.S. Dept. of State</u>, 257 F.3d 828, 833 (D.C. Cir. 2001).  "In a suit brought to compel production, an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" <u>Id.</u> (quoting <u>Goland v. CIA</u>, 607 F.2d 339, 352 (D.C. Cir.1978)). Furthermore, a decision to award summary judgment may be based solely on agency affidavits or declarations if they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Moore v. Bush</u>, No. 07-CV-107, 2009 WL 504623, at *3 (D.D.C. Feb. 23, 2009) (quoting <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir.1981)).

Feild was tasked with coordinating the responses to plaintiff's FOIA request. Defs. Renewed MSJ at 6.  According to Feild, he "followed routine procedures for locating documents considered potentially responsive to any FOIA request." <u>Id.</u>, Third Declaration of Robert W. Feild ("Feild Decl.") ¶8.  To that end, he searched both paper and electronic records for responsive documents. <u>Id.</u> ¶9.  Specifically, Feild 1) manually searched the paper documents in

his possession in his office, 2) electronically searched the files on his local hard drive and also on

the shared file server, and 3) conducted a keyword search of his electronic mail using the term

"recontamination." Id.  Feild then transferred all responsive records to paper format, and after

withholding or redacting only that information protected by one of the FOIA exemptions,

released the documents to plaintiff. Id.  Feild also provided three discretionary document

releases, including the Final Work Plan for the Recontamination Study, the Recontamination

Study Report, and the data accompanying the Recontamination Study. Id.

   According to plaintiff, Feild's declaration lacks the requisite detail and is therefore

insufficient as a matter of law. Plains. Mot. for Discovery at 4-6.  Feild's declaration, while

perhaps not the most detailed declaration that could have been made, is certainly adequate.

When Field first received plaintiff's FOIA request, he "interpreted the request to include the

documents generated during the OLS Recontamination Study that provided data or other

information relating to the investigations or substantive findings of that study." Feild Decl. ¶6.

Significantly, he noted that "[a]t the time that the FOIA request was received, [he] had personal

knowledge that data collection for the Recontamination Study had not commenced and that there

were no [responsive] documents yet in existence." Id.  However, after this Court ordered that

defendant conduct a broader search for responsive materials, to include "internal

communications within EPA or communications with potential contractors, memoranda, e-mails,

and other electronically stored information pertaining to the justifications for the Study, its

financing, and drafts of work plans," Feild indicated in his declaration that he did so.  See

Court's Order of October 9, 2008 [#15] at 4; Feild Decl. ¶7.  While Feild did not repeat the

Court's detailed language in his declaration, it is clear that his initial interpretation of plaintiff's

request was limited to only those documents relating to the Study's substantive findings, rather than, as directed by the Court, essentially *all* non-exempt Study-related documents.  This distinction is significant and explains why the lack of detail in Feild's declaration is inconsequential and also why defendant's initial production was so limited.

Plaintiff also argues that the search was inadequate because the documents that were produced in response to its FOIA request themselves suggest the existence of other responsive materials. Plains. Mot. for Discovery at 6-8.  In his final declaration, Feild provides a point by point response to these claimed deficiencies in his production as raised by Mark Travers, an environmental consultant retained by plaintiff.  The following chart compares Travers' asserted deficiencies with Feild's responses.

| Travers | Feild |
|---------|-------|
| - No record of the comparison between EPA data and corresponding XRF data.<br>- E-mail from EPA to contractor refers to concerns about correlation between field work and lab work. | - No soil sampling or analysis had been done when FOIA request was received; hence there were no XRF results to compare with other data.<br>- E-mail to which Travers refers relates to sampling procedures from another contractor. |
| - No field notes, log entries or photographs. | - No field work had been conducted and no notes, entries or photographs had been generated when the FOIA request was received.<br>- Reference upon which Travers relies is from a report produced six months later. |
| - No data evaluation or data validation measures. | - Same; data evaluation did not exist at the time of the FOIA request. |
| - No newspaper articles despite indication that they would be scanned and sent. | - No articles had been published on the date of the FOIA request. |
| - In his experience, it would be likely that there would have been communications pertaining to sampling procedures for the | - E-mail itself looks forward to a meeting to discuss the matter and there are no further documents. |

8

| study. | |
|---|---|
| - No information about power washing home that had high levels of lead contamination | - There are no further documents pertaining to this home. |
| - No monthly progress and work assignment reports. | - According to contract, contractor is only obliged to produce a Task Order Summary Report submitted by contractor to get paid and would not, in any event, identify specific work performed for the Recontamination Study.   In any event, documents referred to in Task Order Summary Reports have been provided. |

As the chart makes clear, the documents and other data Travers claimed were not produced were not in existence as the time of the FOIA request.  Additionally, Feild searched for additional documents and found none.  His point by point explanation and refutation satisfies me that there is no genuine issue of material fact that (1) additional documents and data do not exist and (2) the agency made a thorough search in response to the request.  Since plaintiff has not produced any evidence that defendant's response to its FOIA request was inadequate or motivated by bad faith on defendant's part, I recommend that, following Feild's completion of a second search of his electronically stored files, that this Court 1) grant <u>Defendant's Motion for Summary Judgment</u> [#10], 2) deny <u>Asarco Incorporated's Objection and Motion to Strike Motion for Summary Judgment Used as Opposition to Application for Leave to Take Immediate Discovery</u> [#14], and 3) grant <u>Defendant's Renewed Motion for Summary Judgment and Opposition to Plaintiff's Renewed Application for Discovery,</u> and 4) dismiss the case.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).**

**SO ORDERED.**

_____/S/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: April 28, 2009